Jay Gould were answered by the court, and a motion by the company to open a default taken was denied. In Case No. 4,515, a petition by said Jay Gould to take proof of the title to said stock was denied, and an order for the suspension of the delivery of certain shares to Heath and one Raphael was vacated. In Case No. 4,-516, the compensation of the master was fixed by the court.]

---

HEATH (ERIE RAILWAY CO. v.). See Cases Nos. 4,513–4,516.

---

## Case No. 6,308.

### HEATH v. HILDRETH.

[See Case No. 6,309.]

---

## Case No. 6,309.

### HEATH v. HILDRETH.

[1 MacA. Pat. Cas. 12; Cranch, Pat. Dec. 96.] [1]

Circuit Court, District of Columbia.　Oct. 15, 1841.

PATENTS—PRIORITY OF INVENTION—"REDUCED TO PRACTICE" DEFINED—CAVEAT—LACHES.

[1. The right of a first inventor, who is maturing his invention and preparing to make application in a reasonable time, to a patent is not barred by the fact that before making his application a subsequent inventor has obtained a patent, and has put the invention into actual use.]

[Cited in Richardson v. Hicks, Case No. 11,-783. Approved in Re Wagner, Id. 17,038; Ellithorp v. Robinson, Id. 4,409. Applied in Mowry v. Barber, Id. 9,892.]

[2. To be the "first inventor," within the meaning of the patent law of 1836 (5 Stat. 117), it is not necessary that he who first conceived the idea should reduce it to practice otherwise than by making a model and drawings from which one skilled in the art would be enabled to carry it into actual use.]

[Cited in Marshall v. Mee, Case No. 9,129; Re Seeley, Id. 12,632. Approved in Stephens v. Salisbury, Id. 13,369.]

[3. "Reduced to practice," as used in the patent law, does not import bringing the invention into use, but rather reducing it to such form that it may be used so as not to be a mere theory. If a machine be invented and described in such manner that it may be made and used, and especially if a model be made, the invention may be said to be reduced to practice.]

[4. The filing of a caveat, as provided for in the twelfth section of the act of 1836, is for the benefit of the inventor, and enables him to have notice of any interfering application; and hence an omission to file it while maturing his invention does not impair his rights.]

[5. It is doubtful whether mere lapse of time between the time of invention and the filing of the application will authorize the commissioner to refuse a patent to the first inventor, especially when he was bona fide taking measures to improve as perfect his invention, and preparing to apply for a patent, unless there has been some intermediate use by the applicant or by his consent; and, in any event, a delay of four years does not have that effect.]

[This was an appeal by George W. Hildreth, owner of patent No. 1,517, granted

[1] [Cranch, Pat. Dec. 96, contains only a partial report.]

March 29, 1840, from a decision of the commissioner of patents, in interference proceedings, awarding to George Heath priority of invention of an improved canal lock gate.].

The Commissioner:

It is admitted by both parties that the inventions are substantially the same, and it is not claimed by Hildreth that the invention ultimately perfected and presented at the patent office [by him] is any other than the one to which the witnesses on the part of Heath testify to having seen in the possession of said Heath as early as the spring or summer of 1836. On the other hand, it does not appear that Hildreth invented said gate or had any knowledge of it until the summer of 1838. It is therefore perfectly apparent from the testimony (and is not seriously controverted by Hildreth) that Heath had conceived the idea of the gate in question and constructed one in miniature, to wit, a model, long before the first notions of the same entered the mind of Hildreth, which would certainly seem to settle the question of priority of invention, and certainly does settle it, unless the courts have given a construction or signification to the word "invention" very different from that ordinarily attributed to it. But there are two points upon which Hildreth relies, to wit: First. He claims that Heath has forfeited his right by neglecting to "put it into actual use." Secondly. That the evidence is that Heath had abandoned his invention. As to the first point, the statute in so many words gives the patent to the "original and first inventor," and nowhere requires the same to be reduced to practice or put into use—a condition too important to have been omitted, if it were really a prerequisite. And, moreover, among the circumstances which are enumerated as invalidating a patent already obtained, is proof that the same "has been described in some public work," &c., which is sufficient without proving "putting into use." It certainly would be preposterous under our statute to require an applicant who had invented a steamship to build one of full size, and put it into operation, before a patent could issue or his right be protected. As matter of practice, the great mass of patents daily granted are granted upon models of what has never been reduced to practice in any other sense than the invention of Heath was so reduced. The statute requires as necessary to the grant of a patent that the "invention," &c., should be of something "not known or used before," &c., which renders previous knowledge without use sufficient to invalidate a patent, and destroys the ground upon which Hildreth rests his claim. But it is not to be taken as granted that the courts, in the face of the statute, have decided that reduction to practice is necessary to preserve the rights of the party; and it is incumbent on Hildreth to show such decisions, if they exist. The cases of Bedford and Hunt and Evans and Eaton,